LUDDINGTON (BRIGHAM v.). See Case No. 1,874.

LUDELING (JACKSON v.). See Case No. 7,139.

---

## Case No. 8,598.

### LUDINGTON et al. v. The NUCLEUS.

[2 Am. Law J. (N. S.) 563.]

District Court, D. Wisconsin. Jan. Term, 1850.

MARITIME LIEN—MATERIALS FURNISHED — JURISDICTION OF ADMIRALTY OVER LAKES—ACT OF CONGRESS—DISTRICT COURT.

Contracts for materials furnished, at the home port, in the building of steamboats and other vessels, are not within the act of congress extending the jurisdiction of the district courts to certain cases upon the lakes and navigable waters connecting the same, approved Feb. 26, 1845 [5 Stat. 726].

[Cited in People's Ferry Co. v. Beers, 20 How. (61 U. S.) 402; The Edith, Case No. 4,283.]

[This was a libel by Robert Ludington and Henry U. King against the schooner Nucleus (Alanson Sweet, claimant).]

MILLER, District Judge. The demand of these libellants is for materials furnished in the building of this vessel. It appears in evidence that the vessel was launched in the month of June, 1848; and that a very small portion of the materials were furnished after that date. The libellants furnished the materials, from their store in Milwaukee, to the builders of the vessel at the same place, at different times, from the month of Nov. 1847, to the month of Oct., 1848. The vessel was enrolled and licensed, in the month of October, 1848, and made her first voyage in the spring of 1849; and before the filing of this libel. The claimant, in his answer, denies that, at the time the cause of action accrued, this vessel was enrolled and licensed for the coasting trade, and was employed in business of commerce and navigation, as set forth in the libel. By the law of this state boats and vessels used in navigating the waters of the state, are liable for the materials used and labor bestowed, in their construction; and a party can file his claim and proceed, in the courts of the state, against the boat or vessel by name. Contracts for marine service, in building, repairing and supplying ships, are cognizable in courts of admiralty, as maritime and appertaining to commerce and navi-

gation; and when a lien is given by the local law, they may be enforced by admiralty process. The Gen. Smith, 4 Wheat. [17 U. S.] 438; The St. Jago de Cuba, 9 Wheat. [22 U. S.] 409; Peyroux v. Howard, 7 Pet. [32 U. S.] 324; The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175; The Jerusalem [Case No. 7,294]; Adm. Rule 12. Demands for materials furnished and labor bestowed in the construction of vessels not launched, are decided to be within the admiralty jurisdiction, where the local law gives a lien; provided such vessels are intended or designed for maritime business upon the high seas, or tide waters. Read v. Hull of a New Brig [Case No. 11,609]; Davis v. A New Brig [Id. 3,643]; Harper v. The New Brig [Id. 6,090]; Stevens v. The Sandwich [Id. 13,409]. As the employment of these vessels was to be maritime, the contracts for labor and materials were for maritime purposes. The contracts were such as touched rights and duties appertaining to commerce and navigation; and were enforced by admiralty process against vessels, which from their location and construction were designed, or intended for the employment of commerce and navigation upon the high seas, or tide waters. From these authorities it appears, that this court might entertain jurisdiction of this cause, if jurisdiction co-extensive with the admiralty jurisdiction of the national courts, has been extended to the lakes.

The only act of congress, conferring upon this court jurisdiction, similar to the admiralty jurisdiction possessed by district courts, in pursuance of the constitutional provision, is "an act extending the jurisdiction of the district courts, to certain cases, upon the lakes, or navigable waters connecting the same;" approved Feb. 26, 1845. By this act, "the district courts of the United States shall have, possess and exercise, the same jurisdiction in matters of contract and tort, arising in, upon, or concerning steamboats and other vessels of twenty tons burden and upwards, enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation, between ports and places in different states and territories, upon the lakes and navigable waters connecting the said lakes, as is now possessed and exercised by the said courts, in cases of the like steamboats and other vessels employed in navigation and commerce, upon the high seas, or tide waters, within the admiralty and maritime jurisdiction of the United States; and in all suits brought in such courts, in all such matters of contract, or tort, the remedies and the forms of process, and the modes of proceeding shall be the same as are, or may be used by such courts in cases of admiralty and maritime jurisdiction; and the maritime law of the United States, so far as the same is or may be applicable thereto, shall constitute the rule of decision in such courts in the same manner, and to the same extent, and with the same equities as it now does in cases of admiralty and maritime jurisdiction." "The object of this act appears to be, first, to bring these cases within the cognizance of the district courts, without regard to the citizenship of the parties, as cases arising under a law of the United States, (that is to say, under the act itself;) and, secondly, as far as it could constitutionally be done, to apply to them the same rules, both of procedure and of decision, as if they had pertained to ocean instead of inland navigation, and so been strictly of admiralty jurisdiction; or in other words, to subject them to the operation of the admiralty law of the United States." Conk. Adm. 6. In the construction of statutes generally, "everything which is within the intention of the makers of the act, is as much within the act, as if it were within the letter; Stowel v. Zouch, 1 Plow. 366. The meaning of the legislature may be extended beyond the precise words used in the law, from the reason, or motive, upon which the legislature proceeded, from the end in view, or the purpose which was designed." U. S. v. Freeman, 3 How. [44 U. S.] 556. Upon these rules, it is plausibly argued, that this case falls within the act in spirit and intent. But this is an act to extend the jurisdiction of courts, not of inferior, but of limited jurisdiction, created by law. In the exposition of such a statute every part is to be considered, and the intention of the legislature extracted from the whole. Such intention must be apparent on the face of the statute. Wilkinson v. Leland, 2 Pet. [27 U. S.] 627; U. S. v. Fisher, 2 Cranch. [6 U. S.] 358.

The jurisdiction of courts, of limited jurisdiction, created by statute, should be made affirmatively to appear, for "the fair presumption is, that a case is without the jurisdiction until the contrary appears." And it is "necessary, inasmuch as the proceedings of no court can be deemed valid further than its jurisdiction appears, or can be presumed to set forth upon the record, the facts or circumstances which give jurisdiction, either expressly, or in such manner as to render them certain by legal intendment." Turner v. Bank of America, 4 Dall. [4 U. S.] 11, 1 Cond. R. 205. Courts, which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction. These rules have been rigorously adhered to by the courts of the United States, at all times and under all circumstances. Kemp v. Kennedy, 5 Cranch [9 U. S.] 185; McCormick v. Sullivant, 10 Wheat. [23 U. S.] 192; Ex parte Bullman and Ex parte Swartwout, 4 Cranch [8 U. S.] 75, 96; Grignon v. Astor, 2 How. [43 U. S.] 319; and many other cases. It is well understood that the federal courts do only possess and exercise jurisdiction, conferred by the constitution and laws of the United States; and that such jurisdiction must be shown by facts, or circumstances properly pleaded. Before this court can possess, or exercise the quasi admiralty ju-

risdiction conferred by the act, it must be alleged in the libel that "steamboat, or other vessel, is of twenty tons burden or upwards, enrolled and licensed for the coasting trade, and at the time when the cause of action accrued, was employed in business of commerce and navigation between ports and places in different states and territories, upon the lakes and navigable waters connecting the said lakes." Upon that averment, or allegation in the libel, the court is authorized and empowered by the act to exercise the same jurisdiction as "in cases of the like steamboats, or other vessels employed in navigation and commerce upon the high seas, or tide waters, within the admiralty and maritime jurisdiction of the United States." This averment in a libel, is as essential to confer jurisdiction under the act, as that of citizenship, or alienage in a declaration or bill, under the act to establish the judicial courts of the United States, approved September 24, 1789 [1 Stat. 73].

It no where appears in this very cautiously drawn statute, that congress intended to confer upon the courts, full admiralty jurisdiction, which is limited by and depends primarily upon the nature of the contract, or tort. But, "on the contrary, congress seems to have had an eye, rather to those provisions of the constitution which confer upon the national legislature, power to "regulate commerce with foreign nations, among the several states, and with the Indian tribes"; and upon the judiciary jurisdiction of "all cases arising under the laws of the United States;" and to have intended merely, to subject the descriptions of cases, specified in the act, to the practical operation of this constitutional provision, and sub modo, to the admiralty forms of procedure." Conk. Adm. 4. From a critical examination of the act, it is reasonable to infer, that congress strictly pursued the following intimation of the supreme court in The Jefferson, 10 Wheat. [23 U. S.] 458, 6 Cond. R. 173: "Whether, under the power to regulate commerce between the states congress may not extend the remedy by the summary process of the admiralty, to cases of voyages on the western waters, it is unnecessary for us to consider. If the public inconvenience, from the want of a process of an analogous nature, shall be extensively felt, the attention of the legislature will doubtless be drawn to the subject." The increasing commercial intercourse between the different states, by means of lake navigation, required more than the ordinary legal remedies afforded by the state tribunals. The title of the act implies a limited or partial extension of jurisdiction to the courts. The certain cases alluded to in the title, are described in the act, to be "matters of contract and tort, arising in, upon, or concerning steamboats or other vessels of twenty tons burden or upwards, enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation, between ports

and places in different states and territories, upon the lakes and navigable waters connecting said lakes." These are terms of description and of limitation, as well as of jurisdiction. The steamboat or other vessel must be of twenty tons burden or upwards, enrolled and licensed, and at the time the cause of action accrued, employed in business of commerce and navigation on the lakes, &c. The jurisdiction of the courts is not intended by the act, to be ascertained or determined, by the nature or character of the cause of action alone; but also, by the description and employment of the vessel. The vessel is required to be employed in business of commerce and navigation at the time the cause of action accrued; and not, as in the courts of admiralty, merely designed or intended for such employment. The words "at the time" seem to have been cautiously inserted in the act for the purpose of confining the jurisdiction conferred within the actual necessities of commerce upon the lakes. The actual necessities of commerce require that the summary jurisdiction of the admiralty should be exercised; in cases of contracts and torts strictly maritime, which no doubt was the inducement to the enactment of the statute under consideration; and may be a reason for its cautious and limited terms. It has been observed before, that upon contracts for supplies or materials furnished, or labor bestowed, in the construction of boats or vessels, it is only in virtue of state laws, that a lien is deemed to attach. Because, such lien is created by the state law, it is enforced in the admiralty, otherwise the parties would have to resort to the common law remedies. The lien created by the state law, is regarded as in its nature maritime, and is, therefore, recognized in courts of admiralty, and enforced by admiralty process. But the contract, being an ordinary transaction between persons on shore; and of the same place, the necessities of commerce do not require the creation of a lien by statute: The principal reason, or necessity for such a lien, is for the better security of the material man and shipwright. This is a subject of local legislation, induced by local policy; and not absolutely necessary to be brought to the consideration of the national courts, but properly cognizable in those of the state. To enforce this lien the state courts possess full and complete power and authority. But as liens cannot be created by the laws of a state, in cases of damages by torts, and of contracts entered into, without its territorial limits, the exigencies of commerce required the summary process of the admiralty, in cases of contracts and torts of steamboats and other vessels afloat, or employed in business of commerce and navigation on the lakes. Parties are not required by the act to resort to the federal courts, in pursuit of the remedies thereby provided for, as to courts of general ad-

miralty jurisdiction. The act saves the "right of a concurrent remedy at the common law, when it is competent to give it; and any concurrent remedy, which may be given by the state laws, where such steamer, or other vessel, is employed in such business of commerce and navigation." This saving provision, probably, was not necessary, as parties can select their own tribunal; but it may tend to show, that the certain cases of contract and tort, made cognizable by the act, in the courts of the United States, are not to be deemed exclusively within the jurisdiction of those courts, as courts of admiralty. A similar inference may, probably, be drawn from the saving provision in the act, of the "right of trial by jury of all facts put in issue in such suits, when either party shall require it;" as the trial by jury is unknown to courts of admiralty, where the civil law mode of trial is alone followed.

I do not deem it necessary for the libellant, at the hearing, to prove that the steamboat or vessel was actually enrolled and licensed. The evidence of the enrolment or license is in the possession or within the knowledge, or perhaps under the control of the respondent. The presumption is, that a vessel would not be employed in business of commerce and navigation, without a license, and in violation of the revenue laws, at the risk of a forfeiture. A proper allegation, or averment in the libel of the facts or circumstances, required by the act to confer jurisdiction, is sufficient, unless denied by a plea to the jurisdiction of the court, and sustained by proof, as in cases at law or in chancery. Nor is the extent of the employment of a steamboat or vessel a material subject of inquiry. If a steamboat or vessel is afloat and ready for such employment as the act contemplates, she would, I think, be subject to the admiralty process of this court. For these reasons, I am of the opinion, that contracts for materials furnished at the home port, in the building of steamboats or other vessels, are not within the act of congress, extending the jurisdiction of the district courts to certain cases, upon the lakes and navigable waters connecting the same, approved Feb. 26, 1845; and this court must therefore, in such cases decline the exercise, of the quasi admiralty jurisdiction conferred by the act. The libel is ordered to be dismissed, for the want of jurisdiction.